# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

AMERICAN NATIONAL PROPERTY
& CASUALTY COMPANY,

        **Plaintiff,**

  vs.                            Case No. 04-C-1185

MICHAEL A. GRAHAM,

        **Defendant.**

## DECISION AND ORDER

      Michael Graham ("Graham") sold insurance for American National Property and Casualty Company ("ANPAC") for almost five years. He operated under an agency agreement with ANPAC that purports to stifle his ability, for one year, to solicit or accept business from ANPAC policyholders if he left the company. Less than three months after ending his relationship with ANPAC, Graham had submitted 79 cancellation requests from ANPAC policyholders. Invoking this Court's diversity jurisdiction, ANPAC brought this action alleging that Graham (1) misappropriated trade secrets in violation of section 134.90 of the Wisconsin Statutes, (2) breached his contract with ANPAC in two different ways, and (3) breached a common law duty of loyalty to ANPAC. ANPAC has similar actions with similar facts pending in two Wisconsin state courts against two other former agents named Tom Brass ("Brass") and Michael Moran ("Moran").

      Graham now moves the Court to "exercise its discretion [to] transfer the litigation in [this mater] from the United States District Court, Eastern District of Wisconsin to the Circuit

Court of Racine County, or . . . the Circuit Court of either Waukesha or Kenosha County." (Mot. for Order Transferring Litig. to the State of Wisconsin Circuit Court at 1.) Graham gives three reasons for his request: (1) the litigation pending against Brass and Moran involve the same issues as this case; (2) ANPAC is forum shopping because it suffered adverse rulings on motions in the Brass and Moran litigations; (3) the issues in this case will require review by the Wisconsin Court of Appeals.

Graham's first two arguments hardly warrant discussion. Well over one hundred years of law illustrate the rule, in one fashion or another, that when a federal court has original jurisdiction of a matter a plaintiff has the right "to invoke the jurisdiction of the federal court and that court [is] bound to take the case and proceed to judgment. It [cannot] abdicate its authority or duty in favor of . . . state jurisdiction." *Kline v. Burke Const. Co.*, 260 U.S. 226, 234 (1922); *Wilcox v. Consol. Gas Co. of N.Y.*, 212 U.S. 19, 40 (1909) ("When a Federal court is properly appealed to in a case over which it has by law jurisdiction, it is its duty to take such jurisdiction."); *Chicot County v. Sherwood*, 148 U.S. 529, 534 (1893) ("But the courts of the United States are bound to proceed to judgment and to afford redress to suitors before them in every case to which their jurisdiction extends. They cannot abdicate their authority or duty in any case in favor of another jurisdiction."); *Liberty Mut. Ins. Co. v. Penn. R.R. Co.*, 322 F.2d 963, 966 (7th Cir. 1963) (collecting cases).[1] Graham concedes that this Court has original,

---

[1] The list goes on. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996) ("We have often acknowledged that federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress."); *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 818 (1976) (commenting on the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them"); *England v. Louisiana Bd. of Med. Exam'rs*, 375 U.S. 411, 415 (1964) ("'When a federal court is properly appealed to in a case over which it has by law jurisdiction, it is its duty to take such

diversity jurisdiction. The fact that similar litigation is currently pending in state court is irrelevant. ANPAC has the right to invoke this Court's diversity jurisdiction and this Court has a duty to take the case and proceed to judgment.

That duty is all but absolute, however, which makes Graham's third argument only slightly more formidable than his first two. Graham maintains that this case involves important issues about Wisconsin's adoption of the Uniform Trade Secrets Act and he urges the Court to transfer the litigation to state court so that the state can resolve issues about its own laws. Graham does not cite any law to suggest what precedent would encourage (or require) the Court to grant his request.

Whether knowingly or unknowingly, Graham must be invoking the doctrine of abstention, since that doctrine covers the exceptional circumstances under which a federal court may decline or postpone the exercise of its jurisdiction. "The doctrine of abstention . . . is an extraordinary and narrow exception to the duty of a District Court to adjudicate the controversy before it." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976). Abstention is confined to a few general categories.

One type of abstention, often called *Pullman* abstention (after *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941)), involves cases that present a federal constitutional issue that may no longer arise (or arise in a different context) once a state court has resolved state law questions. *Colo. River*, 424 U.S. at 814. There are no federal constitutional issues in

---

jurisdiction.'" (quoting *Wilcox*, 212 U.S. at 40)); *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 404 (1821) (federal courts "have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given").

this case, so *Pullman* abstention does not apply. Another type of abstention involves cases in which federal jurisdiction is invoked to restrain state criminal proceedings, certain types of state nuisance proceedings, or collection of state taxes. *Colo. River*, 424 U.S. at 816. That is frequently called *Younger* abstention, *see Younger v. Harris*, 401 U.S. 37 (1971), and it does not apply here, either. A third type of abstention is commonly referred to as *Burford* abstention.[2] *See Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). *Burford* "allows a federal court to dismiss a case only if [1] it presents difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case at bar or if [2] its adjudication in a federal forum would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 726-27 (1996).[3] Even putting aside *Quackenbush*'s holding that *Burford*

---

[2] The *Colorado River* Court also recognized situations when the doctrine of abstention would not apply but when "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation" might call for federal courts not to exercise jurisdiction. *Colo. River*, 424 U.S. at 817 (quotation omitted). Those situations require "contemporaneous exercise of concurrent jurisdictions"—in other words, the same litigation pending in both a federal and state court. *Id.* Though the *Colorado River* Court distinguished such situations from those in which abstention is appropriate, the doctrine has nevertheless come to be known as *Colorado-River* abstention. Whatever the doctrine may be called, it does not apply to Graham's case. The *Colorado River* Court noted that "the circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration are considerably more limited than the circumstances appropriate for abstention." *Id.* at 818. Such circumstances are not present here, if for no other reason, because there is no concurrent state court action involving these parties. *See also Blue Cross and Blue Shield of Ill. v. Cruz*, 396 F.3d 793, 801 (7th Cir. 2005) ("'This circuit has recognized consistently that the primary duty of the district court is to exercise the jurisdiction vested in it by law; the presumption is against abstention.'" (quoting *Sverdrup Corp. v. Edwardsville Comm. Unit Sch. Dist. No. 7*, 125 F.3d 546, 549-50 (7th Cir 1997)).

[3] It is worth noting that the second type of *Burford* abstention may not be exercised unless the state offers some type of specialized proceeding for the adjudication of the parties' claims. *See Int'l Coll. of Surgeons*, 153 F.3d at 363-64. Undoubtedly, that does not apply here.

-4-

abstention may be exercised "only [in cases] where the relief being sought is equitable or otherwise discretionary," *id.* at 731, *Burford* abstention does not apply here. There are no questions of state law "bearing on policy problems of substantial public import."

Graham maintains that there are open questions of Wisconsin law about whether customer information can be a trade secret under the Uniform Trade Secrets Act, Wis. Stat. § 134.90. ANPAC alleges that the policyholder information that Graham used to secure business from ANPAC policyholders is a trade secret. Twenty-three years ago the Wisconsin Supreme Court held precisely the opposite. *Corroon & Black-Rutters & Roberts, Inc. v. Hosch*, 325 N.W.2d 883 (1982). Applying principles from the Restatement of Torts, the *Corroon* court concluded that a list containing names and other information about insurance policyholders was not a trade secret. *Id.* But that was before Wisconsin adopted the Uniform Trade Secrets Act, which has a set of criteria different from the Restatement of Torts for determining whether something is a trade secret. Wis. Stat. § 134.90. Graham contends that whether *Corroon* is still good law is an open question and one properly addressed by Wisconsin courts. That argument, at least so far as Graham develops it in his brief, is frivolous.

Wisconsin cases decided since the adoption of the Uniform Trade Secrets Act hold that, while the factors considered in *Corroon* are still helpful, the Uniform Trade Secrets Act embodies the correct legal standard to determine whether something is a trade secret. *See Minuteman, Inc. v. Alexander*, 434 N.W.2d 773, 779 (Wis. 1989) (reversing lower court decision that customer list is not trade secret under *Corroon* test of Restatement factors and remanding for consideration of whether customer list is a trade secret under Wis. Stat. §

134.90); *Burbank Grease Servs., LLC v. Sokolowski*, 693 N.W.2d 89, 95 (Wis. Ct. App. 2005) (restating *Minuteman* holding that whether a customer list is a trade secret is measured by Wis. Stat. § 134.90). Indeed, the language of the *Minuteman* decision is unmistakable: "[T]he *Corroon* test no longer embodies the definition of trade secret." *Minuteman*, 434 N.W.2d at 779. It is difficult to understand what Graham contends is an open question; and "*Burford* abstention is rarely, if ever, appropriate when 'the state law to be applied appears to be settled.'" *Int'l Coll. of Surgeons v. City of Chicago*, 153 F.3d 356, 362 (7th Cir. 1998) (quoting *Colo. River*, 424 U.S. at 815). The merits of this lawsuit are for another day, however. For now, suffice it to say that Graham has not made the Court aware of any policy problems of substantial public import that transcend the results of this case. Consequently, there is no basis for his motion asking the Court to transfer this litigation to state court.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

Graham's Motion For Order Transferring Litigation To The State Of Wisconsin Circuit Court [Docket No. 9] is **DENIED**.

Dated at Milwaukee, Wisconsin, this 19th day of May, 2005.

**BY THE COURT:**

**s/Rudolph T. Randa**
**HON. RUDOLPH T. RANDA**
**Chief Judge**