# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**AMERICAN NATIONAL PROPERTY &
CASUALTY COMPANY,**

        **Plaintiff,**

  v.                                                 **Case No.    04-C-1185**

**MICHAEL A. GRAHAM,**

        **Defendant.**

## DECISION AND ORDER

On December 13, 2004, the plaintiff American National Property & Casualty Company ("ANPAC") filed its complaint, invoking this Court's diversity jurisdiction. In its complaint, ANPAC alleges that the defendant Michael A. Graham ("Graham") violated the terms of agreements entered into by the parties. Specifically, ANPAC alleges that Graham, after terminating his relationship with ANPAC, misappropriated ANPAC's trade secrets, breached his contract with ANPAC, and violated his common law duty of loyalty by soliciting ANPAC customers. ANPAC also claims that Graham has failed to pay back compensation received under the parties' agreements. Pending before the Court now are the parties' motions for summary judgment.[1]

---

[1] Graham seeks summary dismissal of all claims against him. ANPAC seeks summary judgment in its favor solely on the claim that it is entitled to recover payments made to Graham.

Unfortunately, the Court will not reach the substance of the parties' arguments. The parties have violated this Court's local rules and the Court simply cannot understand various discrepancies in the record before it. Below, the Court highlights *some* of the problems it has encountered.

Civil Local Rule 56.2 states, in part:

Motions for summary judgment must comply with Fed. R. Civ. P. 56 and Civil L.R. 7.1 . . . .
(a)  Motion.  The moving papers must include either (1) a stipulation of facts between the parties or (2) the movant's proposed findings of fact supported by specific citations to evidentiary materials in the record (e.g., pleadings, affidavits, depositions, interrogatory answers, or admissions), or (3) a combination of (1) and (2).
> (1)  The movant must present only the factual propositions upon which there is no genuine issue of material fact and which entitle the movant to judgment as a matter of law . . .
> (2)  Factual propositions must be set out in numbered paragraphs, with the contents of each paragraph limited as far as practicable to a single factual proposition.
(b)  Response. . . .
> (1) A specific response to the movant's proposed findings of fact, clearly delineating only those findings to which it is asserted that a genuine issue of material fact exists.  The response must refer to the contested finding by paragraph number and must include specific citations to evidentiary materials in the record which support the claim that a dispute exists. . . .
> (2)(d) All factual assertions made in any brief must be supported by both specific citations to evidentiary materials in the record and the corresponding stipulated fact or proposed finding of fact. . . .
> (e)  In deciding a motion for summary judgment, the Court must conclude that there is no genuine material issue as to any proposed finding of fact to which no response is set out.

United States District Court for the Eastern District of Wisconsin, Civ. L.R. 56.2.

The parties have failed to comply with this Court's Civil Local Rule 56.2 in various ways. First, two of Graham's proposed findings of fact have no supporting citation. (*See* Proposed Findings of Fact of Def., M. Graham (hereinafter "Def.'s PFOF") ¶¶ 1, 2.) A fact that is neither supported nor stipulated to is not a fact properly presented. Second, Graham proffers legal conclusions as factual findings. (*See* Def.'s PFOF ¶¶ 9, 10, 11.) Granted, the line between a factual proposition and a legal characterization or conclusion may be nebulous at times. However, if a purported factual proposition cannot be traced to any specific citation in the record and simply stands for the proposition that a given action is violative of the law, the proffered proposition is most likely a legal argument or conclusion. Such advocacy must be left to the argument portion of a brief. Finally, Graham has raised multiple facts in his brief that are not contained in his proposed findings. *See, e.g.*, Br. in Supp. of Mot. for Summ. J. 7 (stating the "fact" that "ANPAC does business in 37 states"); *id.* at 13 (discussing Graham's access to certain information); *id.* at 14 (identifying Pat Leeper's responsibilities); *id.* at 16 (identifying information contained in commission statement). This is just a sampling of information that appears nowhere in the proposed findings of fact. ANPAC, for its part, has provided no "specific response" to Graham's proposed findings of fact, as required by Civil L.R. 56.2. ANPAC has set out its own facts in its brief, but these facts are not numbered or presented consistent with this Court's local rules.[2]

---

[2]ANPAC, with its brief in support of its motion for summary judgment, did include a document entitled, "Findings of Fact and Conclusions of Law." (*See* Docket No. 31-4.) This filing, rather than setting forth proposed findings of fact, is more akin to a pre-drafted order.

3

The Court's rules related to summary judgment are not simply technical hoops for the parties to jump through. They are the streamlined means whereby the Court is able to discern what facts are before it and whether those facts are disputed. The rules provide an orderly way for the parties to identify and respond to each other's proposed facts, rather than providing redundant material without any response. The argument portion of the parties' briefs, apart from invoking facts related to common sense or judicial notice, should *not reference any facts that do not first appear in properly presented proposed findings of fact*. Ignoring the rules creates a burden on the parties and the Court.

Beyond violations of its local rules, there are discrepancies in the record that are neither explained nor reconciled. For example, on December 13, 2005, the Court received the document entitled "Affidavit of Michael A. Graham in Support of Motion for Summary Judgment." (*See* Docket No. 25.) Paragraph 2 of that affidavit states that "[e]ffective November 1, 1999," Graham "signed an Agent Agreement with American National Property & Casualty Company." In his affidavit, Graham avers that "[a] copy of the Agent Agreement is appended hereto as Summary Judgment Exhibit 'A'." Exhibit A, however, is an "Agent Agreement" dated January 1993 and signed by an agent, Michael E. Moran. That is not the sole problem with Graham's affidavit, which also avers that, attached thereto as "Summary Judgment Exhibit 'B'," is a copy of the Agent Advance Agreement Graham signed on

4

October 6, 1999. Exhibit B, in fact, is an agreement dated January 1999 and signed by an agent, Thomas Brass.[3]

There is another set of problems that has fairly broad-reaching effects. ANPAC paid Graham a certain amount of advanced compensation or income, though the exact sum and its proper characterization is a matter of dispute. ANPAC wants this money back, because it claims that Graham did not earn that money through any commissions derived from sales. Graham argues that the money is rightfully his. Graham, to support his argument, cites to Paragraph 6 of the "Advance Agent Agreement" entered into by the parties, which purportedly does not require repayment of those advance monies if both the Advance Agent Agreement and another agreement–the parties' "Agent Agreement"–were terminated simultaneously. (*See* Def.'s Br. 19.)

Graham's key factual proposal undergirding this argument is found in Paragraph 18 of his proposed findings of fact. That proposed finding references a provision of "Paragraph VI. of the Agent Advance Agreement." The citation provided in support of the proposed fact's language is "SJ Ex. B. ¶6." The Court understands that the referenced Exhibit B is the exhibit with that designation attached to the affidavit of Michael Graham.

---

[3]There is some variation between the documents available on the on-line docket of this case and the hard copies of documents received by the Court. For example, the online document, Docket No. 25-3, contains a sub-heading "S.J. Exhibit 'A'-Agent Agreement." That title does *not* appear on the same document filed with the Court. Similarly, the paper copy of that exhibit received by the Court contains the words "Exhibit 'A'" in the lower right-hand portion of the first page. That phrase does not appear on the same page of the same exhibit on the on-line docket. The Court assumes that the submitting party modified this exhibit after hard copies had been sent to the Court and before the same document was posted through the electronic case filing system. Similar discrepancies are found in Docket No. 25-4. These types of modifications may engender confusion. The version of the document received by the Court should have been filed in the electronic case system.

5

Having examined that exhibit, the Court found no "Paragraph VI" in the Agent Advance Agreement. Only "Sections" in that document are designated by Roman numerals. Thus there is a "Section VI," but not a "Paragraph VI." Other portions of that Agreement are designated by letter or arabic number. That minor point aside, the Court could not locate in that document the language quoted in Graham's proposed finding of fact. The Court suspects that either the parties have failed to submit certain referenced documents or have improperly identified documents in their briefs.

The Court hoped to have this mystery resolved by referencing the plaintiff's supporting/opposing brief.[4] On page 7 of that brief, ANPAC quotes the same language from the same Advance Agreement that is mentioned in Graham's proposed finding of fact. ANPAC, in its brief, provides a citation for its quote: "Leeper Aff., Ex. B, Agent Advance Agreement at 1-2 of 2."[5] (*See* ANPAC Br. at 8.) Various facts in ANPAC's supporting/opposing brief claim support in Leeper's affidavit.

In looking for the non-existent provision in Graham's purported agreement, which does not bear his signature or name, the Court was now faced with Leeper's affidavit. To be accurate, two affidavits were submitted by Pat Leeper. The first such affidavit submitted was unsigned. ANPAC did subsequently submit an updated, signed affidavit on January 1,

---

[4]ANPAC supplied one brief both supporting its motion for summary judgment and opposing Graham's.

[5]Even the citation on page 8 of ANPAC's supporting/opposing brief is perplexing. The citation at the top of page eight states "(Leeper Aff. , Ex. B, Agent Advance Agreement at 1-2 of 2.)" This citation suggests that the Agent Advance Agreement being referenced is two pages in length. Yet, the Agent Advance Agreement submitted as Exhibit B to the Affidavit of Michael Graham is seven pages in length.

6

2006. (*See* Docket No. 35.) That updated affidavit, presumably, is the affidavit referenced in ANPAC's supporting/opposing brief.

Paragraph 4 of Leeper's updated affidavit states that a copy of Graham's Advance Agreement with ANPAC "is attached to this Affidavit and labeled as Exhibit B." (P. Leeper Aff. ¶ 4.) Leeper's affidavit, however, only contains an "Exhibit E." The presence of that lone exhibit, Exhibit E, to this updated affidavit is partially explained by a letter, dated January 4, 2006, sent by ANPAC's counsel and accompanying the updated affidavit. That letter states:

> I enclose the Affidavit of Pat Leeper. Mr. Leeper was out the holiday week on vacation and we have just been able to obtain his signed document. Plaintiff had filed an unsigned Leeper Affidavit with the motion papers in response to defendant's motion for summary judgment and in support of plaintiff's motion for summary judgment.
>
> I do wish to point out one change in Mr. Leeper's Affidavit. We indicated in our initial submission that the amount due under the AAA Agreement from Mr. Graham was $176,518.99. Draft Affidavit, ¶ 15. The actual amount is $173,963.16, as supported by the updated Exhibit E to the enclosed Affidavit. We did want to alert the court and counsel to this change.

(Letter from A. Simpson to Hon. Rudolph T. Randa, Jan. 4, 2006.)

ANPAC made no indication–either in the motion for summary judgment or elsewhere–that Leeper's first, unsigned affidavit was a "draft" affidavit, as indicated in the citation contained in the above quote. The Court does not even know what a "draft" affidavit is. If ANPAC possessed the signed affidavit when it made its original submission, the Court can only wonder why the signed affidavit–the second Leeper affidavit received by the Court–

7

is dated January 3, 2005, some days after the date on which the unsigned "draft" affidavit was filed. This Court does not accept draft filings or unsigned affidavits. That ANPAC filed the updated affidavit within a matter of days is of no consequence.

The proper procedure for correcting or adding information in a filing is to *amend* that submission. To amend a filing, however, is to replace it in its entirety. In the present circumstances, ANPAC has made a substantive change to the substance of the affidavit. As such, Leeper's second affidavit should be treated as an amended affidavit. But, ANPAC submitted its amended Leeper affidavit (the signed one) with only one exhibit, an updated Exhibit E–no other amendments were attached thereto even though the affiant averred that other exhibits were attached. This is no oversight, as evidenced by counsel's letter of January 4, 2006. ANPAC is asking the Court to look at the exhibits attached to the original, unsigned affidavit–except for Exhibit E–and also look to the updated signed affidavit and its attached, amended Exhibit E. The original affidavit is properly stricken because it is unsigned. Inosfar as that affidavit is struck, the exhibits attached thereto have not been properly submitted to the Court. The second affidavit, the signed one, is faulty insofar as the statements contained therein are not true–there was no Exhibit A, Exhibit B or other exhibits (except for Exhibit E) attached thereto. How can the Court consider the other exhibits when they were not sworn to when submitted? ANPAC asks the Court to use portions of two affidavits–both an original and an amended version. The former is not signed and the latter does not contain the exhibits it claims to.

There is yet *another* problem. The Court, even if it chose to do so, cannot consider the exhibits attached to Leeper's first-filed affidavit (the unsigned one). As filed, that first affidavit contains no exhibits. Returning to the original problem that led to the Leeper affidavit excursion, the Court cannot find those agreement provisions referenced by the parties. The Court does not rule out that there is some simple explanation that would resolve all of these questions. The number of omissions suggests some type of technological glitch, possibly. If there is an explanation for these discrepancies, the parties may apprise the Court accordingly.

This much is certain: The Court has already spent too much time repeatedly perusing the parties' briefs just to make sense of the citations and their exhibits in the record. Still, there are too many questions that must be answered before the Court can address the merits of the parties' arguments. Though highly unusual for parties represented by counsel, the Court finds little alternative, absent some illuminating explanation from the parties, but to order full re-briefing of the motions pending before it. This means that the parties will be required to submit new proposed findings of fact and supporting briefs.

The Court has expended a considerable amount of time attempting to understand the many discrepancies identified above and places the parties on notice that it will not brook violations of its local rules in this upcoming round of revised briefing. Nor will it tolerate inconsistencies in proffered factual representations.

9

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

The parties **SHALL** re-brief the pending motions for summary judgment. Initial briefs must be received no later than June 30, 2006. Responses and replies shall be submitted in accordance with the briefing schedule set forth in the Court's local rules.

The Court converts the present date for a final pre-trial conference into a scheduling conference call. During that call, a new date for trial will be established.

Dated at Milwaukee, Wisconsin this 2nd day of June, 2006.

> BY THE COURT
>
> s/ Rudolph T. Randa
> **Hon. Rudolph T. Randa**
> **Chief Judge**

10

Case 2:04-cv-01185-RTR   Filed 06/02/06   Page 10 of 10   Document 46